IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALEXIS V. GARNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV1280 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Alexis V. Garner, brought this action pursuant to section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on October 9, 2009, alleging an onset date of February 12, 2005. (Tr. 62.)[2] The application was denied initially and again upon reconsideration. (*Id.* at 73; 89.) Plaintiff then requested and was provided a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 111-13.) At the August 22, 2011 hearing were

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

Plaintiff, her attorney, her mother, and a vocational expert ("VE"). (*Id.* at 26.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-18.) On October 4, 2012 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-3.)

## II. FACTUAL BACKGROUND

Plaintiff was 18 years old on date of application, had a high school education, was able to communicate in English, and had no past relevant work. (*Id.* at 15.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. The Court reviews Supplemental Security Income matters in accordance with 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

(5)  Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 416.920.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her application date of October 2, 2009. (Tr. 11.) The ALJ next found in step two that Plaintiff had the following severe impairments: organic brain dysfunction, residuals from fractures received in an ATV accident, attention deficit hyperactivity disorder, a depressive disorder, posttraumatic stress disorder, and a visual dysfunction. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 12.) At the fourth step of the sequence the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 15.) The ALJ reached the fifth step of the sequence and concluded that there were jobs in the national economy which Plaintiff could perform consistent with her RFC, age, education, and work experience. (*Id.* at 16.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care

---

[5] "Residual functional capacity" ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

providers. (*Id.* at 13-15.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work. (*Id.* at 13.) However, Plaintiff was limited to

> occasional bending, stooping, kneeling, crawling, and only occasional climbing with a sit/stand option that allows the claimant to stand and stretch for 1 to 2 minutes at her work station. In addition, the claimant is limited to simple routine jobs that have a SVP [Specific Vocational Preparation] of one or two, low stress type work that does not involve production pace, work deadlines, and where the claimant can work at her own pace within a predictable schedule, involving no more than frequent interaction with supervisors, co-workers, or the public.

(*Id.* at 13-14.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff had no past relevant work. (*Id.* at 15.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). The ALJ found that given her age, education, work experience, and RFC, there were jobs in the national economy that Plaintiff could perform, such as sock folder, ticket stamper, and work-ticket distributor. (Tr. 16.)

## V. ANALYSIS

Plaintiff argues that the ALJ erred by failing to consider all relevant evidence and failed to evaluate whether the Plaintiff met or equaled the requirements for an intellectual disability

6

set forth in 12.05C of the Listings.[6] (Docket Entry 12 at 4.) Plaintiff contends that

> ALJ Rideout committed significant error by not even mentioning multiple IQ scores on record which place Ms. Garner in the mild range of mental retardation. In April of 2005, her verbal IQ was assessed at 65, her performance IQ at 66 and her full scale IQ at 63. In November of 2009, her verbal IQ was assessed at 69 and her full scale IQ was found to be 70. The ALJ did not even mention these scores – he only noted a full scale IQ of 72 at a 2010 evaluation. Only mentioning evidence which weighs in favor of his own decision requires remand as the adjudicator must consider evidence which weighs in favor of approval as well. He also did not even mention Listing 12.05C at Step 3 of the SEP despite its implication given the IQ scores between 60 and 70. Not even attempting to analyze whether or not a Plaintiff meets a medically relevant listing constitutes error requiring remand for assessment of the relevant listing.

(*Id.* at 4-5 (citations omitted).)

For the following reasons, the undersigned agrees with Plaintiff and therefore, this matter should be remanded for further consideration by the Commissioner.

### A. The ALJ Erred In Failing to Consider All Relevant Evidence in Determining Whether Plaintiff Met Listing 12.05C.

Plaintiff argues that the ALJ's failure to consider Listing 12.05C at Step 3 of the sequential analysis constitutes error. The Court agrees. A duty of an ALJ includes identifying "relevant listed impairments," and "[comparing] each of the listed criteria to the evidence of [a claimant's] symptoms." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The duty to identify relevant listed impairments is triggered when there is "'ample evidence in

---

[6] Although it is not entirely clear as to whether Plaintiff makes two separate and distinct arguments on appeal, it appears that Plaintiff's reference to "relevant evidence" speaks directly to her IQ scores which are paramount to meeting Listing 12.05C. Thus, the Court will address the IQ scores in Prong 2 under Listing 12.05C.

the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments . . . ." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D. Md. 1999) (quoting *Cook*, 783 F.2d at 1172); *see, e.g., Martin v. Colvin*, No. 1:11CV408, 2014 WL 4114207, at *4 (M.D.N.C. Aug. 20, 2014); *Drane v. Colvin*, No. 1:10CV901, 2014 WL 408753, at *4 (M.D.N.C. Feb. 3, 2014); *see also Morgan v. Colvin*, No. 7:13-CV-279-BO, 2014 WL 6473525, at *2 (E.D.N.C. Nov. 18, 2014) ("The ALJ's failure to consider Listing 12.05C in this instance, where there is obviously evidence that may support the listing, is clear error.").

Step 3 of the sequential analysis requires the ALJ to determine whether Plaintiff's impairment(s) meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. 20 C.F.R. § 416.920. Listing 12.05 is described, and its applicable criteria are set forth, as follows:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

8

The Fourth Circuit has described the first showing under Listing 12.05—deficits in adaptive functioning initially manifested during the developmental period—as "Prong 1." *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). The Prong 1 diagnostic criteria for an intellectual disability includes two components—deficits in adaptive functioning *and* an onset before age 22—that both must be satisfied in order for the Listing to apply. *Id.* at 475 (commenting that an ALJ's finding that neither component was satisfied would be upheld if "[e]ither finding alone" was supported by substantial evidence). The Fourth Circuit has also described the conjunctive paragraph C requirements—a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function—as "Prong 2" and "Prong 3." *Id.* at 473.

Here, in his decision, the ALJ evaluated Plaintiff's claim that her impairments met the requirements of any listed impairment:

> The state agency consultants determined that the claimant's impairments did not meet or equaled [sic] the criteria of any of the listed impairments. No treating or examining physician has mentioned findings that the claimant's condition either met or was medically equal in severity any [sic] of the of the listed impairment [sic]. After careful review, the Administrative Law Judge finds that the claimant does not have impairments that meet or equal the requirements of any section of Appendix 1.

(Tr. 12.)

The Commissioner contends that Plaintiff does not have valid IQ scores or deficits in adaptive functioning. (Docket Entry 14 at 5-7.) Moreover, the Commissioner asserts that the ALJ noted that neither her physicians nor stated agency physicians concluded that her impairments met or equaled a listing section. (*Id.*; *see also* Tr. 12.) However, there is ample

9

evidence that the ALJ should have considered whether Plaintiff's impairments met Listing 12.05C. Under Prong 1, there is evidence to show that Plaintiff may have deficits in adaptive functioning that manifested before she turned 22. While Prong 1 of Listing 12.05C "does not expressly define 'deficits in adaptive functioning' . . . '[a]daptive activities' are described elsewhere in the [Mental Disorders] Listing . . . as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'" *Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *5 (M.D.N.C. Apr. 16, 2012) (citing *Blancas v. Astrue*, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05, 12.00(C)(1))); *accord Hager v. Astrue*, No. 2:09CV1357, 2011 WL 1299509, at *2 (S.D.W.Va. Mar. 31, 2011) (unpublished).[7] This "include[s] limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n. 3 (2002)). To this extent, case law shows that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. *See, e.g., Salmons v. Astrue*, No. 5:10CV195–RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012)

---

[7] Though Listing 12.05 does not specifically define "adaptive functioning," SSA regulations provide that "[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018–01, at 20,022 (Apr. 24, 2002). Because "the SSA declined to adopt any one of [these] specific definitions . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, inter alia, deficits in adaptive functioning as defined by any of the four professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

10

(collecting cases).

Additional case law suggests that literacy is also an important factor in determining whether a claimant has deficits in adaptive functioning. *See Luckey v. U.S. Dep't of Heath & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989); *Salmons*, 2012 WL 1884485, at *7; *Holtsclaw v. Astrue*, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011); *Rivers v. Astrue*, No. 8:10-cv-314-RMG, 2011 WL 2581447, *4 (D.S.C. June 28, 2011). Similarly, whether the claimant has ever lived independently is a relevant inquiry. *Compare Salmons*, 2012 WL 1884485, at *7, *with Holtsclaw*, 2011 WL 6935499, at *5.

Another guiding factor is whether the claimant has ever provided care for others, or whether she herself is dependent on others for care. *Compare Salmons*, 2012 WL 1884485, at *7 (noting claimant was heavily dependent on his mother and was not responsible for the care or supervision of others) *and Holtsclaw*, 2011 WL 6935499, at *4-5 (noting claimant had never lived independently and required a parent's help) *with Hancock*, 667 F.3d at 475-76 (affirming denial of benefits where the claimant managed the household and cared for her three young grandchildren), *and Caldwell v. Astrue*, No. 1:09cv233, 2011 WL 4945959, at *3 (W.D.N.C. Oct. 18, 2011) (claimant assisted in the care of elderly parent). School records and past academic performance also are important indicators of deficits in adaptive functioning prior to age 22. *See Salmons*, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); *Rivers*, 2011 WL 2581447, at *3 (noting claimant classified as special needs at school, had repeated evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth grade); *see also Conyers v.*

11

*Astrue*, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8 (June 29, 2012), *adopted in* 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012) (discussing the claimant's school history).[8]

Additionally, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, *Luckey*, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. *Hancock*, 667 F.3d at 475-76 (concluding the ALJ's finding that the claimant did not manifest requisite deficit in adaptive functioning to be supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); *Harts v. Astrue*, 2012 WL 529982, at *6 n. 3 (D.S.C. Jan. 30, 2012) (distinguishing *Luckey* because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning and because the claimant in *Harts* did not otherwise meet the Listing 12.05C criterion of a valid IQ score within the range of 60-70), *adopted and incorporated in* 2012 WL 529980 (D.S.C. Feb.17, 2012). Finally, the tasks a claimant is able to undertake, although not determinative, have been considered in this analysis. *See generally Radford v. Astrue*, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (finding that the claimant's ability to perform certain tasks was not inconsistent with mild mental retardation); *see, e.g., Hancock*, 667 F.3d at 476 & n. 3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); *Salmons*, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive).

Here, the Commissioner points out some of Plaintiff's abilities based upon her

---

[8] Although *Conyers* was addressing Listing 12.05B, the adaptive functioning analysis in that case is instructive even when the issue is whether the Listing 12.05C criteria are met.

12

Function Report and testimony. (Docket Entry 14 at 6-7; *see also* Tr. 31-33, 37-38, 205-09.) However, the administrative record also includes evidence of Plaintiff's inability to correctly perform many household chores. (Tr. 38, 50.) Plaintiff needs assistance in taking medications (Tr. 44, 51.) Although Plaintiff completed high school, the record reflects academic limitations (including a 504 plan) Plaintiff underwent after the ATV incident. (Tr. 39, 215-18, 222, 224-25, 229, 233-38.) Additionally, Plaintiff engaged in unskilled worked during a short period, but was ultimately terminated from her job for providing the incorrect dates for her vacation. (Tr. 33-34, 40.) While the ALJ indicated several times that Plaintiff has lived on her own (Tr. 13-14), the record suggests otherwise. Other than a brief attempt to live with her sister, it appears that Plaintiff has lived with her parents for her entire life. (Tr. 29-30, 39, 49-50.) Plaintiff no longer drives because of her frequent accidents as a result of poor peripheral vision. (Tr. 30-31, 51-52.) Additionally, the ALJ "accept[s] the fact that the [Plaintiff] has problems with her memory and her ability to recall and follow instructions because of her cognitive disorder . . . ." (Tr. 15.) All of this is not to say that Plaintiff does have deficits in adaptive functioning which manifested before age 22. However, it does provide ample evidence under Prong 1 such to trigger an analysis under Listing 12.05C.

Prong 2 under Listing 12.05C is satisfied when a claimant has a valid IQ score of 60 to 70. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Plaintiff argues that the ALJ failed to consider all of the IQ Test scores in the record, two of which are in the range of 60 and 70.[9]

---

[9] The Wechsler Adult Intelligence Scale provides verbal, performance, and full scale IQ scores, and the SSA uses the lowest of the three scores when analyzing Listing 12.05. 20 C.F.R. Part 404, Subpart P, App.1, § 12.00D(6)(c); *see also Rainey v. Heckler*, 770 F.2d 408, 410 (4th Cir. 1985).

13

(Tr. 273, 348, 650.) In the Fourth Circuit, an ALJ is permitted to weigh conflicting IQ test results. *Hancock*, 667 F.3d at 474 (*citing Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987)). After weighing the validity of an IQ test, the ALJ has the discretion to reject a test's validity.[10] *Id.*

Although the ALJ does not discuss Listing 12.05C in his analysis, he does mention one of the test scores in his Step 2 analysis. The ALJ found that Plaintiff had "borderline intellect [sic] function" based on "a full-scale IQ score of 72 on the Weschler Adult Intelligence Scale-IV." (Tr. 12, 650.) The ALJ mentions only Plaintiff's March 2010 test in making this determination. (*Id.*; *see id.* at 11-16 (failing to mention any other IQ test)). However, the record includes evidence of three separate IQ tests for Plaintiff: the March 2010 test; a November 2009 test, in which Plaintiff scored 69 for verbal IQ, and 70 for full-scale IQ; and an April 2005 test, in which she scored 65 for verbal IQ, 66 for performance IQ, and 63 for full-scale IQ. (Tr. 12, 273, 348.) The ALJ failed to mention the 2005 and 2009 IQ tests in his decision.

Defendant argues that all three IQ tests were considered by the state agency consultants[11] and therefore the ALJ's failure to weigh the tests explicitly was harmless. (Docket Entry 14 at 3-4.) This argument misunderstands the role of the state agency consultants. The ALJ is required to balance conflicting evidence and make a determination of

---

[10] The Commissioner argues that Plaintiff's IQ scores do not reflect life-long functioning in the range of 60-70. (Docket Entry 14 at 5-6.) Such a conclusion would have the Court, not the ALJ, determine the validity of Plaintiff's IQ scores. The discretion of invalidating IQ scores is left to the ALJ. *Hancock*, 667 F.3d at 474.

[11] The Court notes that that the state agency physicians did not explicitly consider Listing 12.05C. (*See* Tr. 67-68, 83.)

disability, not the consultants. *See Hays*, 907 F.2d at 1456. In doing so, the ALJ is required to discuss relevant evidence that weighs against his decision. *See Murphy*, 810 F.2d at 438. The ALJ did not do this here. Consequently, the undersigned cannot determine whether the ALJ's decision was supported by substantial evidence because it is impossible to tell what weight, if any, was given to the April 2005 and November 2009 IQ tests. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *Cook*, 783 F.2d at 1173.

Last, there also is evidence implicating Prong 3 under Listing 12.05C. To qualify as a "significant work-related limitation" under Prong 3, the required physical or mental impairment "need not be disabling in and of itself." *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985). This requirement is therefore met when the ALJ has found that a claimant has other severe impairments. *Luckey*, 890 F.2d at 669; *Watson*, No. CBD–11–2491, 2013 WL 136425, at *8 (D.Md. Jan. 9, 2013); 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.00A (describing "significantly limits" as, "i.e., is a 'severe' impairment(s), as defined in [§ 416.920(c)]). Here, at step two, the ALJ has already found that Plaintiff had severe impairments, including "organic brain dysfunction, residuals from fractures received in an ATV accident, attention deficit hyperactivity disorder, a depressive disorder, posttraumatic stress disorder, and a visual dysfunction," that may satisfy Prong 3 of the 12.05C analysis. (Tr. 11-12.) Therefore, as to Prong 3, the record shows sufficient evidence warranting an analysis by the ALJ as to whether Plaintiff met the requirements for listing under 12.05C.

In light of the evidence, the ALJ erred in failing to consider listing 12.05C. Thus, "remand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his

15

decision." *Ivey v. Barnhart*, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (*citing Murphy*, 810 F.2d at 438); *see also Radford*, 734 F.3d at 295 ("[I]nsufficent legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings."); *Cook*, 783 F.2d at 1173 ("Without . . . explanation, it is simply impossible to tell whether there was substantial evidence to support the determination."); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (requiring explicit indication by the ALJ as to the weight given to each piece of relevant evidence). None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. It is not for this Court to weigh the competing evidence and determine whether the Plaintiff qualifies for listing under 12.05C. *See Craig*, 76 F.3d at 589. Nevertheless, for the foregoing reasons, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by sufficient legal analysis such that the Court can determine whether the decision is supported by substantial evidence. Further, the ALJ failed to consider Listing 12.05C when there was ample evidence to trigger such an analysis.

Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 11) should be **GRANTED**

and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **DENIED**.

_____<br>
Joe L. Webster<br>
United States Magistrate Judge

Durham, North Carolina
February 18, 2014